UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICIA HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CV512 RWS |
| ) | |
| SWAN, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Defendant SWAN, Inc. is the plan administrator for the employee benefits program of Gateway Hotel Holdings, Inc. ("Gateway"). Gateway operated the Regal Riverfront Hotel where Plaintiff Patricia Harris' husband was employed as a painter. Harris alleges that SWAN violated her rights under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. She asserts various claims against SWAN including a claim for a denial of benefits and a breach of fiduciary duty. SWAN has moved for summary judgment and Harris has moved for leave to file an Amended Complaint. Because Harris has failed to establish any of these claims as a matter of law, I will grant summary judgment to SWAN. I will deny Harris' motion for leave to file an Amended Complaint as untimely and prejudicial.

*Background*

Plaintiff Harris is the surviving spouse of Decator "Greg" Harris, who was employed as a painter by Gateway Hotel Holdings, Inc. at the Regal Riverfront Hotel in St. Louis, Missouri (now called the Millennium Hotel, St. Louis). Mr. Harris worked for Gateway from 1984 until an illness forced him to stop working on November 10, 2000. On November 16, 2000, while on his unpaid leave of absence, Mr. Harris completed a "Benefit Enrollment/Change Form," wherein he

indicated his preference for medical, dental, vision, and life insurance coverage for year 2001. In January of 2001, Mr. Harris was either terminated or resigned from his employment with Gateway.[1] After Mr. Harris left the employment of Gateway in January, he and his family received a letter, notifying them of the right to continue health care coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161-1169 (as amended). On April 30, 2001, Mr. Harris passed away.

In 2001, SWAN was the contracted third-party administrator for Gateway's employee benefits program. Effective January 1, 2001, AIG Life Insurance Company ("AIG") contracted to provide insurance coverage for employees of Gateway under the Millennium Hotels & Resorts Employee Health Benefit Plan. Under the Plan, SWAN was the overall plan administrator, but SWAN delegated to AIG, the "discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan." AIG had the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan. AIG also had discretionary authority to determine whether a person is entitled to benefits under the plan.

Following Mr. Harris' death, Plaintiff Harris had a telephone conversation with Ms. Kristen Palagano, Gateway's Director of Human Resources at the Regal Riverfront Hotel. During the course of this conversation, Harris asked Ms. Palagano about collecting life insurance benefits as a result of her husband's death. Ms. Palagano informed her that Mr. Harris was not eligible for life insurance benefits at that time. Ms. Palagano gave Harris the telephone number of

---

[1]Plaintiff argues that Mr. Harris was terminated and Defendants state that he voluntarily resigned. This factual disagreement is not a genuine issue of material fact as it does not bear on the legal outcome of this case.

Bill Clifford, a SWAN employee, and told Harris that she could contact Clifford about whether any life insurance benefits were available. Harris never contacted Clifford or anyone else employed by SWAN. Harris never made any written request for a copy of a Summary Plan Description or a "Proof of Loss" form.

On April 1, 2002, Harris filed a lawsuit in state court against Gateway seeking to recover life insurance benefits for the death of Mr. Harris. The case was removed to this Court because of a preemption of Harris' claim under ERISA. On February 11, 2004, I dismissed Harris' claims against Gateway without prejudice for failure to assert her claims under ERISA. At some unspecified point, a Death Claim Form was submitted to AIG requesting that AIG pay Harris $34,000 in group life insurance benefits and $45,000 in supplemental life insurance benefits. On or about May 1, 2003, AIG paid plaintiff the group life insurance benefits in the amount of $34,000, but denied the request for supplemental life insurance benefits, stating that Mr. Harris "was not actively at work, as required by the policy, on or after 1/1/01, the effective date of the Supplemental Life Benefit."

***Legal Standards for Summary Judgment***

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . ." Fed. R. Civ. P. 56(c). Summary Judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court

of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986).

When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. See Roberts v. Browning, 610 F.2d 528, 531 (8th Cir. 1979). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is an "integral part of the Federal Rules as a whole." Celotex, 477 U.S. at 326; City of Mt. Pleasant v. Assoc. Electric. Cooperative, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Under these standards, I review the facts in this case.

*Analysis*

*Denial of Benefits Claim*

Harris has filed this lawsuit against SWAN seeking payment of supplemental insurance benefits after AIG refused to award those benefits. ERISA provides that a participant or beneficiary of an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). SWAN argues that it is the

incorrect party in this claim. Although SWAN was the plan administrator, it did not have discretionary authority with regard to the administration of the plan. Such discretionary authority was delegated to AIG. Harris has admitted that AIG, not SWAN, refused her claim.

The proper party in an action concerning ERISA benefits is the party that controls administration of the plan or the plan itself. See Layes v. Mead Corp., 132 F.3d 1246, 1249 (8th Cir. 1998). Where a defendant is no position to pay out benefits to the plaintiff, the defendant is not the proper party to be sued. See Hall v. LHACO, Inc., 140 F.3d 1190, 1195 (8th Cir. 1998). Merely because a party is the named plan administrator does not necessarily make it the proper party for an ERISA benefits claim. See House v. Paul Revere Life Insurance Co., 1999 WL 33499955, at *2 (W.D. Ark. Nov. 26, 1999).

SWAN did not have the ability to or the responsibility for determining the Mr. Harris' eligibility for the claimed benefits, and SWAN was in no position to pay out benefits to the plaintiff. AIG had sole discretion in determining Harris' eligibility for supplemental life insurance benefits at the time of Harris' claim, and AIG currently retains all such authority. Therefore, I will grant defendant SWAN's motion for summary judgment with regard to Harris' denial of benefits claim.

*Breach of Fiduciary Duty Claim*

Harris asserts that the SWAN made misrepresentations regarding her husband's eligibility for benefits that are actionable under section 1132(a)(1) of ERISA. (Com. ¶ 14) That section does not authorize suits for misrepresentations as it deals exclusively with a person's rights under the terms of the plan. Although I must give a pro se complaint liberal construction, Harris is represented by counsel. As a result, I may grant summary judgment on this issue for Harris'

failure to make an appropriate claim.

In the alternative, even if Harris' Complaint is viewed as a properly asserted claim for breach of fiduciary duty authorized by ERISA, Harris' claim fails as a matter of law. "A civil action may be brought by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief to redress such violations." 29 U.S.C. § 1132(a)(3). Harris claims that SWAN made two misrepresentations which give rise to liability for a breach of fiduciary duty based on misrepresentation. First, she claims that SWAN misrepresented to Mr. Harris that he was eligible for supplemental life insurance benefits based on the fact that he was permitted to complete a Benefit Enrollment/Change Form indicating his preference for medical, dental, vision, and life insurance coverage for 2001. Second, Harris claims SWAN made a misrepresentation to her when Palagano told her that she was not entitled to life insurance benefits.

To establish breach of fiduciary duty based on misrepresentation, Harris must establish the following: 1) defendant's status as an ERISA fiduciary acting as a fiduciary; 2) misrepresentation on the part of the defendant; 3) the materiality of that misrepresentation; and 4) detrimental reliance by the plaintiff on the misrepresentation. Daniels v. Thomas and Betts Corp., 263 F.3d 66 (3rd Cir. 2001). SWAN argues that it is not a fiduciary as defined by ERISA, and therefore, cannot be held liable for a violation of a fiduciary duty.

Under ERISA, a person may become a fiduciary in two ways. First, the plan may identify the person as a named fiduciary under 29 U.S.C. § 1102(a)(1). Second, a person is a plan fiduciary "to the extent (1) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary

responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

SWAN first argues that it is not liable under 29 U.S.C. § 1132(a)(3) because it is not a plan fiduciary. SWAN has stated that it is not identified in the Plan as a named fiduciary pursuant to 29 U.S.C. § 1102(a)(1). SWAN also asserts that it is not a plan fiduciary within the definition of 29 U.S.C. § 1002(21)(A). Harris has not refuted either of these assertions. Because Harris has failed to dispute SWAN's fiduciary status in her arguments, I find that SWAN was not a plan fiduciary. For that reason alone, summary judgment on this issue for SWAN would be appropriate.

Even if SWAN were found to be a plan fiduciary, Harris' claims fail as a matter of law. Permitting Mr. Harris to fill out a Benefit Enrollment/Change form did not constitute a material misrepresentation to either Harris or her husband. Even if Palagano's statements regarding Harris' benefits can be construed as a material misrepresentation on the part of SWAN,[2] a claim under 29 U.S.C. § 1132(a)(3) is inappropriate because it authorizes beneficiaries to bring claims for "appropriate equitable relief." Where adequate relief for a beneficiary is provided elsewhere, further equitable relief is inappropriate. Variety Corp. v. Howe, 516 U.S. 489, 515 (1996). Where a plaintiff has an adequate remedy in the form of a denial of benefits claim pursuant to 29 U.S.C. § 1132(a)(1) and seeks no different relief in a fiduciary breach claim, further equitable relief is inappropriate. See Wald v. Southwestern Bell Corp. Customcare Medical Plan, 83 F.3d 1002, 1006 (8th Cir. 1996). Here, Harris has already received the benefits due her in group life

---

[2] In making this statement, I do not concede that statements made by Ms. Palagano, a Gateway employee, in any way can be attributed to SWAN, but even if they can be, they are still not actionable here.

insurance benefits and may attempt to assert a claim against AIG for supplemental life insurance benefits she was denied. For the these reasons, I will grant SWAN's motion for summary judgment with regard to Harris' claims for misrepresentation.

*Claim for Penalties for Failure to Provide COBRA Notice*

Haris seeks penalties pursuant to 29 U.S.C. 1132(c)(1)(A), alleging that SWAN failed to provide the her with notice of her rights under COBRA. Harris claims that she never received a COBRA notice, but Harris' own statements concede that she did receive the COBRA notice. In fact, in the course of discovery she produced a copy of the COBRA notice that she received. As a result, I will grant SWAN's motion for summary judgment with regard to Harris' claim for penalties for SWAN's failure to provide the COBRA notice.

*Claim for Penalties for Failure to Provide a Summary Plan Description and Proof of Loss Form and to Submit a Claim*

Harris also seeks statutory penalties under 29 U.S.C. § 1132(c)(1) for SWAN's alleged failure to provide Harris with a summary plan description ("SPD") and a "Proof of Loss" form and alleged failure to submit a claim form to AIG following Mr. Harris' death. Under 29 U.S.C. § 1024(b)(4), the plan administrator, upon written request, is required to furnish certain documents to plan participants. A plan administrator may be penalized in an amount of up to $100 a day for a failure to supply requested information within thirty days of the request pursuant to 29 U.S.C. § 1132(c)(1). In order to be entitled to penalties, a plaintiff must "make a clear written request for plan documents that he wishes to see." Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 948 (8th Cir. 1999).

Here, Harris orally discussed her husband's life insurance benefits over the phone with a

Gateway representative . Additionally, Harris has not established that she made any specific requests to the Gateway representative for the plan documents. While Harris may contend that her attorney's letter to Mr. Boll of Millennium Hotels, dated January 17, 2002, constitutes a written request for plan documents, a review of that letter reveals that it is anything but a clear request for plan documents. Harris' counsel did not request a copy of the SDP. He merely stated that he does not have one. Harris cannot establish that she ever made a clear written request for plan documents and therefore, is not entitled to penalties under section 1132(c)(1).

Harris has not asserted any provision in Title I of ERISA that required SWAN to submit a claim form to AIG. Therefore, Harris' claim with regard to penalties for SWAN's failure to submit this claim form fails as a matter of law. As a result, I will grant SWAN's motion for summary judgment with regard to Harris' claim for penalties for SWAN's failure to provide the SPD and the "proof of loss" form as well as for SWAN's failure to submit a claim to AIG.

*Claim for Fees and Costs*

Harris' Complaint asserts that she is entitled to the costs of her prior litigation under 29 U.S.C. § 1132(a)(3)(B). Generally, absent applicable statute or enforceable contract, litigants must bear their own litigation costs. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 257 (1975). Although ERISA authorizes the award of attorney's fees at the discretion of the court under 29 U.S.C. § 1132(g), Harris is not entitled to attorney's fees here because defendant SWAN was not a party to the prior lawsuit. Additionally, Harris does not raise her claim under 29 U.S.C. § 1132(g), but instead asks me to grant attorney's fees and costs in the form of restitution pursuant to 29 U.S.C. § 1132(a)(3).

Section 1132(a)(3) authorizes "appropriate equitable relief" for ERISA violations. An

award for restitution is inappropriate in this case because Harris is seeking compensatory restitution, not equitable restitution. See Kerr v. Charles F. Vatterott & Co., 184 F.3d at 944. "Restitution may be either equitable or compensatory." Id. The Eighth Circuit has drawn a distinction between equitable restitution and compensatory restitution in ERISA cases brought under 29 U.S.C. § 1132(a)(3). An equitable restitution award "focuses on the defendant's wrongfully obtained gain while a compensatory [restitution] award focuses on the plaintiff's loss at the defendant's hands." Id. Additionally, "[Equitable] restitution seeks to punish the wrongdoer by taking his ill-gotten gains . . . Compensatory damages on the other hand focus on the plaintiff's losses and seek to recover in money the value of the harm done to him." Id. (citation omitted).

Because section 1132(a)(3) only provides for "appropriate equitable relief," including injunctive, restitutionary, and mandamus relief, but not compensatory relief, Harris' claim for fees is inappropriate in this matter. See id. Here, Harris seeks relief for her losses, but does not allege any "ill-gotten gains" on the part of the defendant. Harris seeks relief for a federal court filing fee, a mediation fee, and other fees and expenses, including the contingent fee paid to the plaintiff's attorney. Nowhere does Harris allege that any of these fees benefitted or were paid to SWAN. As a result, I will grant SWAN's motion for summary judgment with regard to plaintiff's claim for attorney and other fees.

*Motion for Leave to File an Amended Complaint*

On September 2, 2005, Harris sought leave to file her First Amended Complaint in which she sought to add two additional defendants and several additional claims. Although Rule 15 of the Federal Rules of Civil Procedure states that leave to amend "shall be freely given when justice

so requires," it is well-established that "plaintiffs do not have an absolute or automatic right to amend." United States v. Fairview Health Sys., 413 F.3d 748, 749 (8th Cir. 2005). Leave is properly denied when there has been undue delay, bad faith, or dilatory motive on the part of the movant, if the amendment would cause undue prejudice to the non-movant, or if the amendments would be futile. Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998).

Harris has not shown good cause for her delay in moving to join additional parties. She has known about the existence of these additional parties since before filing her original Complaint in this matter. Harris sought similar relief against Gateway in a lawsuit filed on April 1, 2002. The other party Harris seeks to join, Richfield Hospitality Services, Inc. ("Richfield"), was the previous plan administrator for Gateway from 1998 to January 2001. Harris admits that she had prior knowledge that the plan was administered by Richfield. The initial case management order in the present lawsuit stated that all motions for joinder of parties or amendment of pleadings had to be filed by November 30, 2004. After numerous extensions of discovery in favor of Harris, on June 3, 2005, I ordered Harris to take the final 36(b)(6) deposition by July 1, 2005 and instructed Harris to tell me by that time whether she sought leave to add any other parties or claims. Harris does not offer any reason for ignoring my directions by her filing her motion to amend two months after the deadline I had set for such motions.

Additionally, Harris' Amended Complaint would be prejudicial to SWAN because it asserts new legal claims and attempts to join additional defendants. SWAN correctly states that allowing the addition of Richfield and Gateway would necessitate the reopening of discovery in order to allow the new parties to defend against Harris' claims. Further, Harris' Amended

Complaint asserts new theories of recovery.[3] Where amendments are late and involve new theories of recovery and impose additional discovery requirements, leave to amend should be denied due to the prejudice involved. Bell, 160 F.3d at 454.

Harris' untimely Amended Complaint would result in both undue delay and prejudice to SWAN. As a result, I will deny plaintiff's motion for leave to file her First Amended Complaint. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Patricia Harris' motion for leave to file her First Amended Complaint [# 36] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant SWAN's motion for summary judgment [# 33] is **GRANTED**.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** as moot.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 17th day of November, 2005.

---

[3] Some of Harris' new claims include discrimination in violation of 29 U.S.C. § 1140 and new claims of breach of fiduciary duty as well as several other claims.